Jack R. Mavis, surviving husband, and Estate of Marion S. Mavis, deceased v. Commissioner. Jack R. Mavis and The Estate of Marion S. Mavis, deceased, Jack R. Mavis, Executor v. Commissioner.
Mavis v. Commissioner
Docket Nos. 48490, 51535.
United States Tax Court
T.C. Memo 1955-99; 1955 Tax Ct. Memo LEXIS 240; 14 T.C.M. (CCH) 332; T.C.M. (RIA) 55099; April 21, 1955
Nelson Gammans, Esq., 161 East 42nd Street, New York, N. Y., for the petitioners. Thomas G. Smiley, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: These proceedings involve deficiencies in income tax for 1949 and 1950 in the amounts of $728.64 and $491.95, respectively. The issue is whether respondent erred in disallowing as losses sustained in the operation of a farm the amounts of $3,150.69 in 1949 and $2,738.89 in 1950. Findings of Fact Petitioner Jack R. Mavis and Marion S. Mavis, who died in 1952, were, prior to *241 and during the taxable years, husband and wife. They filed joint income tax returns for 1949 and 1950 with the collector of internal revenue for the district of Connecticut. The surviving husband will be referred to hereinafter as the petitioner. For some time prior to the termination of World War II, petitioner had been employed by a concern in Brooklyn, New York. He had had a thyroidectomy in 1941 which affected his heart and, because of the condition of his health, he was unable to find proper employment after his war job ended at the close of hostilities. In 1947, petitioner had about $10,000 in the bank and a half interest in his residence in Scarsdale, New York, which was sold in April 1948 for $26,000. His wife was the life beneficiary of a trust fund, with power of appointment of the remainder. The annual income from the trust was from $1,500 to $10,000. The income was $9,640.39 in 1949 and $8,163.39 in 1950. Petitioner lived on his wife's income. Petitioner started in 1947 at age 62 to look for a farm on which he could make his own living, and purchased one in East Thompson, Connecticut, in October of that year for about $13,500. The farm consisted of about 70 acres, *242 some of which had standing timber. The improvements on the premises included a house, barn, garage, mill, chicken house, and two dams. The mill was originally a grist mill and had been used as a soap factory, a planing mill, toy plant, and shoddy mill. The dams backed up water to which petitioner acquired rights and which was used to operate a turbine for power at the mill. Petitioner acquired as part of the purchase price for the farm a 4 1/2 h.p. hand tractor and accessories thereto, including a plow, harrow and disc. Petitioner was reared on a farm until he was 17 years of age but thereafter, until the acquisition of the farm, he had done no farming. He moved onto the property about May 1, 1948, and commenced to make it his home. The land had been used for farming operations for about 50 years prior to its acquisition by petitioner. The previous owner to petitioner sold wood and hay produced on the premises and raised chickens. He informed petitioner that many people wanted to rent and operate the mill. Petitioner realized $250 in 1948 as a deposit on a lease to be entered into for the mill. Petitioner discussed with the previous owner and farmers in the neighborhood the possibilities *243 of operating the farm at a profit. Petitioner sowed buckwheat late in the spring of 1948 but because of the late planting and drought the crop never reached maturity. Such crops as were sown in 1949 did not mature for the same reason. He tried to raise ducks and at one time had 180 of mature age. At the end of the season no more than 82 could be captured. Many of them were shot by hunters; some flew away and others were killed by turtles in the pond. He learned from the venture that 15 pounds of grain were required to produce a pound of weight on a maturing duck. Petitioner was advised by a neighborhood farmer not to raise chickens because of the cost of feed and never raised them. Petitioner had a vegetable garden which he attended to himself. In 1949 petitioner had a new roof placed on, and repaired the foundation of the mill, and made repairs to the dam. He permitted neighbors to use the mill to cut and plane wood, and to pasture cows on his land with no more consideration than an understanding that they would reciprocate by doing work for him. Low water prevented the use of the mill in 1949. Petitioner did not hire a manager to operate the farm. He employed others when he *244 had plowing or harrowing to do because he thought that was less expensive than to purchase and have his own equipment for such work. After the drought in 1948 petitioner obtained some drought-resistant seed for corn, melons, and cucumbers. He planted only a small portion of an acre to cucumbers. Such other crops as he planted in that year failed because of a drought. He has never cut any of the timber on his wood lot. Petitioner did only a very small part of the work on the farm because of the condition of his health. His physical condition was aggravated by a heart attack in 1951. In his returns for the years 1949 to 1952, inclusive, petitioner reported receipts from the farm and claimed deductions for operating it as follows: Receipts
Deductions [1]
1949
$ 57.50
$3,208.19
1950
89.19
2,828.08
1951
207.44
2,760.69
1952
60.00
1,691.32
The receipts were from the following sales: 1949
1950
1951
1952 [2]
Geese
$10.00
Ducks
47.50
$28.70
$113.70
Poultry, dressed
60.49
63.69
Potatoes
30.00
Hay
$60.00
Totals
$57.50
$89.19
$207.39
$60.00
*245 The deductions claimed for farm operations consisted of the following items: 1949
1950
1951
1952
Labor
$1,407.63
$ 784.09
$ 303.58
$ 214.65
Feed
120.87
144.65
122.94
119.60
Seed, plants and trees
76.00
89.22
91.80
21.90
Machine hire
57.00
64.00
Repairs and maintenance
496.17
368.27
454.08
Fertilizer and lime
47.00
66.55
96.55
Gasoline
43.00
35.00
37.00
Taxes
50.77
98.00
Insurance
139.75
241.92
243.21
112.17
Depreciation [3]
770.00
984.00
1,125.00
1,125.00
Automobile upkeep
114.38
222.53
Totals
$3,208.19
$2,828.08
$2,760.69
$1,691.32
The farm losses claimed by the petitioner in his returns, $3,150.69 in 1949, and $2,738.89 in 1950, were disallowed by respondent in his determination of the deficiencies. Opinion Section 23(e) of the Internal Revenue Code of 1939 allows as deductions from *246 gross income losses sustained when incurred in a trade or business. Petitioner contends that the amounts in controversy represent losses sustained in the operation of his farm as a business, contrary to the determination of respondent. The numerous decided cases involving the question point out that the issue is factual, with no single factor accepted as controlling. See Mertens, Law of Federal Income Taxation, Vol. 5, sections 28.72 and 28.73. Profit being at least one of the reasons for conducting a venture as a business, petitioner's burden was to establish that he operated the farm for the purpose of gain. Petitioner was reared on a farm until he was 17 years of age, but did no farm work thereafter until 1948 when he moved to the premises giving rise to the question here. Petitioner testified that he purchased the farm as a place out of which he could make a living. This expression of intention is a factor for consideration but it may be rebutted by proof of circumstances inconsistent therewith. Foran v. Commissioner, 165 Fed. (2d) 705. Petitioner was 62 years of age when he purchased the farm and at that time the condition of his health was such that he could *247 not find proper employment. [4] His ailments prevented him from doing work customarily performed by the owner-operator of a small farm and there is no proof here that he had any hope or expectation that his physical condition would improve sufficiently to permit a more active farm life. We realize that farming operations may be carried on as a business entirely through full or part-time help, but petitioner's age, lack of farming experience, and health at the time of entering upon the venture particularly when viewed in the light of other factors of record, have some bearing on his intent. Large expenditures made each year without any apparent direct relation to anticipated income, are opposed to the idea of economical operation with profit in mind. Raising ducks each year, in spite of losses from such operations, also tends to show lack of a profit motive. Moreover, the extent of petitioner's other activities as a farmer for profit was not shown. Buckwheat was sown in 1948, the amount not appearing, *248 but because of late planting and the dry season none of the crop matured. Petitioner testified that "the same applied to the second year," which was 1949, the first taxable year involved herein. The evidence does not disclose the extent of such plantings to convey some idea of petitioner's motive for the operation. He planted drought-resistant seed on one occasion, but the record does not show the year or whether it was on a profit basis. Lack of real profit motive for such farming as petitioner did is shown by other of his testimony disclosing that even though it was estimated that 800 bushels of cucumbers per acre could be grown by using droughtresistant seed, only a small portion of an acre was planted. He testified that the cucumbers "turned out fairly well" but no income from that source was reported in returns filed for the taxable years or the subsequent two years. There is considerable evidence before us to at least indicate that petitioners occupied the farm as a residence during their declining years, with no hope or reasonable expectation of profit from such small farming operations as conditions would permit them to conduct. The wife's income from the trust assured them *249 a living, and income from the farm was not required to pay for normal living expenses. In any event, we can not conclude from the evidence that respondent erred in disallowing the deductions as business losses. Accordingly, Decisions will be entered for the respondent. Footnotes
1. Exclusive of taxes on the farm in the amount of $83.24 in 1950 and $89.92 in 1951.↩
2. The return listed $38.25 of receipts from ducks but the amount was omitted in arriving at gross profit.↩
3. Based upon cost of $4,500 for the barn and $15,000 for the mill and other property purchased as part of the cost of the farm in 1947; $3,000 was added in 1951 for cost of the chicken house.↩
4. The evidence does not disclose the nature of petitioner's employment before or during the war, or the character of occupation he sought after the termination of his war time work.↩